Filed 8/29/14  P. v. Blanco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERNESTO BLANCO,<br><br>Defendant and Appellant. | F067268<br><br>(Super. Ct. Nos. F12902111; F08500427)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Max Feinstat, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P.J., Franson, J., and Peña, J.

In April 2009, in case No. F08500427, appellant, Ernesto Blanco, pled guilty to first degree burglary (Pen. Code, § 460, subd. (a))[1] and was placed on probation.

In case No. F12902111, a jury convicted Blanco of first degree burglary (count 1/§ 460, subd. (a)), receiving stolen property (count 2/§ 496, subd. (a)), and resisting arrest (count 3/§ 148, subd. (a)(1)), arising out of a March 2012 incident. In a separate proceeding, Blanco admitted allegations that he had two prior convictions within the meaning of the three strikes law (§ 667, subds. (b)-(i)), two serious felony enhancements (§ 667, subd. (a)(1)) and two prior prison term enhancements.

On April 28, 2013, the court found Blanco violated his probation in case No. F08500427 by engaging in the March 2012 conduct underlying the charges in case No. F12902111. The court then sentenced Blanco to an aggregate term of 35 years to life in both cases: 25 years to life on his burglary conviction in case No. F12902111, two five-year serious felony enhancements, and concurrent terms on the remaining counts including Blanco's burglary conviction in case No. F08500427.

On appeal, Blanco contends: 1) the court committed instructional error; and 2) his admission of the prior conviction allegations was not free and voluntary. We affirm.

## FACTS

### The Substantive Offenses

On March 25, 2012, at 5:34 p.m., Fresno County Sheriff's Deputy James Lyman responded to a residence on Jensen Avenue after receiving a dispatch that the garage sensor of an alarm was activated there. While inspecting the garage, Deputy Lyman saw Blanco standing in the backyard. He drew his gun and commanded Blanco to stop and get on the ground but Blanco ran out of the yard. Deputy Lyman chased Blanco into a field where Blanco was eventually taken into custody with the help of a police canine. During a postcustody search, Deputy Lyman found coins, jewelry, pins, a necklace, and a

---

[1] All further statutory references are to the Penal Code.

harmonica in Blanco's pockets. He also found a silver loop earring in an area where he had seen Blanco throw something.

Deputy Lyman inspected the house and found the window on the back door broken, the interior of the house ransacked, and a bicycle leaning against the side of the house. Jayne Shapazian, whose mother lived at the house, arrived on the scene soon after Blanco was taken into custody and identified the items found in Blanco's pockets as property taken from the house.

Blanco testified he was riding his bicycle to his daughter's house when he stopped at the residence to urinate and went behind some bushes. While he was relieving himself, he saw a shiny object in the grass in the backyard and he entered the yard to see what it was. Blanco saw it was jewelry and put it in his pocket. He ran when he was confronted by the deputy because he was trespassing. Blanco denied entering the house or hearing the alarm. He conceded that he possessed stolen property and resisted arrest.

### *Jury Deliberations*

The court finished instructing the jury on March 19, 2013, at 1:50 p.m. Later that afternoon, the jury informed the court that it had reached a verdict on all counts. While polling the jurors, the court noticed that one juror appeared hesitant to state that he agreed with the verdict of guilty on count 1. The court then told the jury it was not going to accept the verdicts. In so doing, the court stated:

> "And our system of law requires that each of you not only reach this conclusion on an individual basis, but that you do it unanimously. And I'm not trying to in any way influence the decision that may ultimately come out of this, but you have to understand that it is my job not to accept a verdict that is not clear and unequivocal, okay, that [is] why I ask those questions."

Deliberations resumed the following morning. At 11:04 a.m., the jury submitted a question to the court asking how to proceed if they had a hung jury. The court told the jury through the clerk that it needed to know if there were any verdicts and for them to be more specific on the nature of the deadlock. At 11:36 a.m., the jury sent a note to the

court stating they were hung on the burglary count and asking how to proceed. The court then advised the attorneys it intended to bring the jury into the courtroom, voir dire them on the nature of the deadlock and, depending on what they disclosed, either send them back for further deliberations or declare a mistrial and accept the verdict as to the other counts.

The prosecutor suggested further argument whereas defense counsel suggested that a "discussion" of CALCRIM would be appropriate. The court, however, brought the jury back into the courtroom and simply asked them whether further instructions, further readback of testimony, or any other assistance by the court would assist them in arriving at a unanimous verdict on the burglary count. In so doing, the court explained,

> "Now ladies and gentlemen, I want you to understand that the law prefers and the purpose of trials is to achieve this, and that is the law prefers that we have unanimous verdicts in all matters submitted to you. It doesn't mean that we are going to force the issue and I think our actions yesterday made that very clear, but if there is something that you feel would aid the twelve of you in reaching a, first of all, accommodating a further discussion of the issues and hopefully reach a unanimous verdict, then it is my job to try to accommodate you...."

After a juror indicated that he or she would like to ask a question and would submit a written request, the court stated:

> "So, folks, thank you for participating in the process. I hope you understand that we have to be as deliberate about it as we are, okay. We aren't going through these motions just for the heck of it. We need to make a record. We need to make sure that everything is done in such a way that your deliberations are not in any way tampered with and that you have a full and complete opportunity to look at everything that you feel is important in your decision-making process, okay, so go back to the room and send me a request."

The jury deliberated for approximately 15 minutes before they were excused for lunch at 12:00 p.m. At 1:30 p.m., they resumed deliberations. At approximately 1:58 p.m., the jury reached guilty verdicts on all counts.

4.

## DISCUSSION

### *The Alleged Instructional Error*

Blanco relies on *People v. Gainer* (1977) 19 Cal.3d 835 (*Gainer*) to contend the court coerced the jury into reaching a verdict when it instructed them that the "law prefers" unanimous verdicts and that the "purpose of trials" is to achieve such verdicts. According to Blanco, since a hung jury is a possible outcome of a trial, the court incorrectly told the jury that the law preferred a unanimous verdict and that the purpose of a trial was to achieve such a verdict. Blanco further claims that this "truly placed 'excessive and illegitimate pressures on the deliberating jury.'" We will reject these contentions.

In *Gainer,* the Supreme Court examined the case law regarding instructions given to deadlocked juries (sometimes called "dynamite" or "*Allen*" charges (after *Allen v. United States* (1896) 164 U.S. 492), and identified "the two elements frequently found in such instructions ... which raise the gravest doubts as to their propriety." (*People v. Gainer, supra,* 19 Cal.3d at pp. 842, 845.) The court determined that the "most questionable feature is the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views." (*Ibid.*) The second aspect of such instructions that the court identified as particularly problematic was "the direction ... that '[the jury] should consider that the case must at some time be decided.'" (*Ibid.*)

After examining the flaws in both of these parts of the instruction before it (the *Gainer* instruction), the court adopted a "judicially declared rule of criminal procedure" that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion on the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (*Gainer*, *supra*, 19 Cal.3d at p. 852, fn. omitted.)

5.

Blanco does not argue, nor do we find, that the comments complained of invoke either of these concerns. Further, jury unanimity in a criminal trial is more than a legal preference or goal, it is a state constitutional requirement. (*People v. Mickle* (1991) 54 Cal.3d 140, 178.) Moreover, it does not follow from the possibility that every criminal trial may end in a hung jury that the law does not favor a unanimous verdict or that the purpose of a trial is not to achieve a unanimous verdict. Accordingly, we reject Blanco's contention that the court coerced the jury into reaching a verdict simply by telling them the law preferred unanimous verdicts and that the purpose of a trial was for the jury to reach a unanimous verdict.

### Admission of the Prior Conviction Allegations

In taking Blanco's admission of the prior conviction allegations, the court stated,

> "So Mr. Blanco, previously we discussed the fact that you have the right to have this same jury decide whether it's true that you've suffered these prior convictions and it would also be their job to determine if they qualify both as strike priors .... You have already entered a waiver of the right to have the jury hear that -- hear those prior conviction matters. You still have the right to a trial. That would be conducted by me, which would require the People to produce proof that you have in fact suffered these convictions and that they constitute ... strike priors ... under the law. [¶] Now if you give up the right to have a court trial, that means that we won't be presenting any further evidence and there won't be any further contest to these prior conviction allegations. You will in fact be admitting them."

The court did not advise Blanco of his right of confrontation or his right against self-incrimination before it took his admission of the prior conviction allegations. Blanco contends the court prejudicially erred by its failure to do so. Blanco is wrong.

Before a trial court accepts a defendant's admission to a prior conviction allegation, the court must enumerate for the defendant the three rights that the defendant is waiving (i.e., to a jury trial, to remain silent, and to confront witnesses), and must obtain waivers of these rights from the defendant. (*People v. Mosby* (2004) 33 Cal.4th 353, 356, 359-360 (*Mosby*).) If an express waiver of these rights is not secured from the defendant, reversal is required unless the record as a whole shows the admission was

6.

voluntary and intelligent under the totality of circumstances. (*Id*. at pp. 360–361.) The question is whether the defendant's admission was intelligent and voluntary "because it was given with an understanding of the rights waived." (*Id*. at p. 361.)

In those cases where "the transcript does not reveal complete advisements and waivers," the court must examine "the whole record, instead of just the record of the plea colloquy" to determine whether the "admission ... was intelligent and voluntary in light of the totality of circumstances." (*Mosby*, *supra*, 33 Cal.4th at p. 361.) The factors the court can consider include the defendant's participation in a trial immediately prior to entering a plea and the defendant's prior experience in the criminal justice system from which he may have learned of his constitutional rights. (*Id*. at p. 365.) "'[A] defendant's prior experience with the criminal justice system' is, as the United States Supreme Court has concluded, 'relevant to the question [of] whether he knowingly waived constitutional rights.' [Citation.] That is so because previous experience in the criminal justice system is relevant to a recidivist's '"knowledge and sophistication regarding his [legal] rights."' ([Citation]; see *United States v. Dawson* (9th Cir. 1999) 193 F.3d 1107, 1110–1111 [the defendant, who had received full advisements in state court action two months before he entered a guilty plea on incomplete advisements in federal court, knowingly waived rights of confrontation and silence despite lack of advisement on either].)" (*Ibid.* )

Here, Blanco waived his right to a jury trial on the prior conviction allegations prior to admitting them. Further, during the jury trial on the underlying offenses, which had just concluded when Blanco admitted these allegations, Blanco exercised his right of confrontation through his attorney's cross-examination of prosecution witnesses. Additionally, from 1977 through 2009, in 14 separate cases, Blanco was convicted of a multitude of felony and misdemeanor offenses. Moreover, the prior strike allegations, the prior prison term enhancements, and the serious felony enhancements were all based on first degree burglary convictions that Blanco suffered in 1977 and 2009, and during cross-examination, Blanco admitted suffering the 2009 burglary conviction.

Accordingly, in view of Blanco's admission of one prior conviction during the trial and his extensive experience with the legal system, we conclude under a totality of the circumstances that Blanco voluntarily and intelligently admitted the prior conviction allegations.

## **<u>DISPOSITION</u>**

The judgment is affirmed.